and now we'll move to the merits calendar. The first case is Belton versus GE Capital. Counsel all here, we have two counsel for appellant. Is that correct? Mr. Nogan, Mr. Nagan. So, if you could just tell me how you're splitting this up, six minutes each, is that right? That's correct. So, this is Joseph Nogan for GE Capital Retail Bank in the Belton case, and I have six minutes, and then Mr. Nagan, who is counsel for Citi in the Bruce case, also has six. And I was hoping to reserve two for rebuttal. That's right, so you've got two minutes for rebuttal, and Mr. Nagan, I think, is keeping one minute for rebuttal. And so, just again, the running rules will be that you'll get three minutes uninterrupted. We'll then sort of take a deep breath. I'll ask my fellow panelists if they had questions, and then I'll ask some questions, perhaps, as well. And then, if we run out of questions and you have other things you want to say, then that's fine. We'll let you know one minute before you get to the three-minute mark, and one minute before you get to your resting mark, but that's not a lot of minutes, I guess, in total. So, you'll get three minutes uninterrupted on four minutes out of the gate. Well, hopefully, I'll do just two. Okay, all right, that's fair. Okay, Mr. Carpinello, you're here for the appellee, is that correct? Yes, Your Honor. Great, okay, so it'll be the same drill for you, but you have 12 minutes. All right, Mr. Noga, you may proceed. Okay, thank you, Your Honor. May it please the Court, Joseph Noga for Appellant, GE Capital Retail Bank. In my limited time, I want to emphasize that the position that we advance is consistent with normal and well-settled principles of statutory interpretation, while the appellee is literally asserting that the statutory interpretation and meeting our heavy burden here requires this Court to turn a blind eye to text and legislative history under, quote, an independent avenue, close quote, of statutory interpretation. In a nutshell, the appellee asserts the claim she is making is per se non-arbitrable. Applying normal principles of statutory interpretation, what do we do? Well, first, we go to the plain text of the statutes. There's nothing there to indicate that the claim is not arbitrable. Does the Federal Arbitration Act explicitly exclude some claims from arbitration? Yes, it does. Is this claim among those? No, it's not. Does Congress know how to exclude a statute's claim from arbitration when it wants to? Yes, it has done so explicitly in a number of instances. Does the Bankruptcy Code have such an exclusion? No. Are there other statutes that the Supreme Court has held are implicitly non-arbitrable to which we can make an analogy? No. The Supreme Court has rejected every argument about implicit non-arbitrability, which includes at least nine statutes. The Supreme Court also has noted that where a statute has been amended since the early 1990s and arbitration is not addressed, the inference from the legislative history is that Congress intended it to be arbitrable. And Section 524.82 has been amended three times since then. So we say that there's little chance that any judicially perceived purpose of a statute could overcome that record on text and legislative history. And indeed, in epic systems, the Supreme Court did not even address the party's policy arguments after completing a similar analysis on text and legislative history. And the purpose of the fresh start of the Bankruptcy Code cannot be the one unique purpose that overcomes the plain language of the Federal Arbitration Act, particularly after recent Supreme Court decisions that have repeatedly rejected Bankruptcy Code purpose-based arguments as a basis to depart from statutory text. Now, if I had more time, I would, you know, go with three additional points. First, that the district court misread McMahon, that the appellee has not suddenly discovered something hidden in the 33-year-old McMahon- Excuse me, you have one more minute. Statutory interpretation as we know it. Second, the Anderson decision was only held controlling on the basis of the misreading of McMahon, but if it were controlling, it would be overruled by epic systems. And third, trying to leverage a court order here as well for a number of reasons. All right, so we'll take a break there and get some questions in. Judge Winter, do you have any questions for Mr. Noga? No, I don't, thank you. All right, Judge Wesley. Yeah, I do, thank you very much. Mr. Noga, are you telling me that if a court were to find that it was quite clear that there is an inherent conflict between the functions that the bankruptcy court was performing with regard to defining the scope of the bankruptcy order, that notwithstanding that clear finding that the absence of a statutory exemption from the reach of the FAA, that it's clearly arbitral, that's the only way to interpret statutes? Is that your view? Well, let me start that- Well, you can either a yes or no, isn't it? Well, no, I think, well, I actually would like to clarify exactly what the question is, because this is a per se, the claim is non-arbitral no matter what the facts are. And so there's a conflict between the two- Anderson says, excuse me, Anderson says, that's the rule in this circuit right now, that there's an inherent conflict between the release under 524 and the scope of the 524. And being able to arbitrate that, it seems quite odd to me that an arbitrator would tell a bankruptcy court what the scope of its order is since generally courts decide what the scope of their orders are. But Anderson says, and nobody's overturned Anderson in our circuit, that Anderson says that there's an inherent conflict. So I'm telling you, if Anderson tells me that I'm stuck with that, and you're telling me that notwithstanding that finding, that Supreme Court dictates to me in Epic and other cases, that I have to ignore that inherent conflict and look for the statutory exception, is that it? Is that how we do business? That is not what we are saying at all. And what we are saying, I think, what we are saying is that, number one, that Anderson does not impinge upon you as much as you just suggested. That in Anderson- That's the reason, but go ahead. Well, I'm suggesting to you if you're honest. In Anderson, right, the key part for us is that the arguments based upon plain text and legislative history will weigh below. So, for example, there's an assumption, and this goes back to Mitsubishi Motors, it's been said as recently as copy credit, that if Congress didn't address arbitrability specifically in a statute and render it non-arbitrable, then the assumption is it's arbitrable. And that assumption could never come into play in Anderson because you couldn't look at the statute to find out what it says. And so with a highly stylized view, it says that essentially, is there any argument you could make on purpose that would suggest that a bankruptcy court should hear this case and then doesn't have the countervailing factors or pieces of information from the statute and legislative history to counterbalance it? Because this is actually a decision, we say, in which there are essentially three factors. I mean, this, again, all comes from what Anderson says it's doing is it's applying McMahon. And if you go all the way back to McMahon, what does it do? Well, it says, go to the plain text and legislative history, then there's an ivid, and then it says, or statute or underlying purpose. And then when you go back and you look at the case that McMahon cites, Mr. D.C. Motors, but also McMahon itself, they're addressing a situation, well, McMahon itself is addressing a situation in which there was no text or legislative history in support of the RICO issue. And they come to the end and they say, okay, McMahon may effectively vindicate the RICO claim in arbitrable form, and therefore there is no inherent conflict between arbitration and the purposes underlying section 1964C. So both McMahon itself and the case it cites are basically talking about effective vindication. And looking across all three of these factors, we say, if you take that approach, which was not taken in Anderson, you come to the conclusion that the claim is arbitrable. And I also note that we say that the plaintiff here is proceeding under just a statutory claim because that's how it was pled. The appellee says that they're proceeding under both a statutory and a court order. So there's no question that there's a statutory element to this case, and it's not just about a court order. Okay, thank you. I have a couple of just very quick questions. This is Judge Sullivan. You don't dispute that this is a core proceeding, or do you? I do not. You do not, all right. And then with respect, you just mentioned that this is both sort of a statutory claim and it's a court order claim. It's a contempt action, right? If it's only, if it were only the contempt, would the analysis be different? Well, yeah, it's not only contempt, but I think you're saying is it only the court order, right? Yeah, right, in other words, not the statutory action. I mean, this thing looks, smells, and walks and talks like a class action under the Fair Debt Collection Practices Act or the Fair Credit Reporting Act. That's what it feels like. Well, I- But it's brought under the bankruptcy code. And so does the fact that it's brought under the code make this analysis different than if it were just, you know, saying that you're on contempt of the court's discharge order? Right, so let me make two points. First is that, you know, we just had a discharge order case go to the Supreme Court in Taggart, and in that case, again, there was no question it was about the discharge order. The court, you know, noticed or referenced the form, and the form, you know, it was just one sentence, the form order, and then immediately went to the statute, tells us what this means, and goes to the statute. So I think that renders this order somewhat different than others. The second is, I think, you know, this definitely is a statutory case. I mean, if you, when you go down to this basics, you know, my client originated a credit card debt pursuant to a contract with Belton that explicitly authorized credit reporting and had a broad arbitration clause, sold the debt before Mrs. Belton's bankruptcy was filed, and my client was not even a creditor in her case, and she is asserting that, in an adversary proceeding, not her case, that section 524H of the bankruptcy code places affirmative credit reporting obligations on non-creditors like my client, and if those affirmative acts are not performed, then the non-creditor violates the discharge injunction as essentially an aider and a better of the current creditor, and that those obligations, in addition to those under the Fair Credit Reporting Act, because we know that the Fair Credit Reporting Act would not require it because there's actually, you know, a court order about that in California. That does not sound like enforcement of a one-sentence order. All right. You've reserved two minutes, so we've gone way over, so you've got a bonus there, but we'll now turn to Mr. Nagin. Thank you. Thank you, Your Honor. May it please the Court. I had prepared remarks, but I want to get right into the questions that were asked. Judge Wesley, you asked a very important question about inherent conflict, and hasn't this been decided already? And the question as to whether the Anderson case controls has to be answered as a negative for two reasons. One is, ethic systems and other precedent in the Supreme Court requires a textual statutory analysis. That wasn't done in Anderson because the parties there had waived it. There's no waiver. Well, excuse me. You raised my name, so I'll ask you a question. You say it requires a textual analysis, notwithstanding the finding of which I think everyone, Anderson, if it stands for anything, it stands for the fact that there is an inherent conflict, and so given that the circuit has already found this inherent conflict in this context, what more does one need to do? Well, I think based on... Are you saying that the statute... So you would answer the question that I posed to your colleague in the affirmative that notwithstanding an inherent conflict, if the statutory text says nothing, then you go ahead and find that it's arbitrable? Well, I think the question... Notwithstanding a finding, notwithstanding a finding of inherent conflict, you would say that ethic tells us we have to, that the statute's silent or no exceptions granted with regard to arbitration that we have to say it's arbitrable. And I would say, Your Honor... Inherent conflict, yes, because that's not the standard. Under the Shearson-Annex case, the McMahon from 87 that Anderson relied on, looking at page 239 there... Well, if you're telling me that Anderson's poorly decided, you're stuck with it until a majority of the activists of this circuit reverse it, and I happen to be senior, so I can't help you there. Right, well, just to finish the point, what McMahon requires is an irreconcilable conflict. An ethic which postdated Anderson also requires an irreconcilable conflict, and that can't be found. If a judge determines, if the court determines that there's a severe or an inherent conflict, that's something very different than an irreconcilable conflict, which we know doesn't exist because of the concurrent jurisdiction that Congress has created. And to say that there is an inherent or let alone an irreconcilable conflict is hard to support. And I would say that it's hard to see the panel drawing the conclusion, the panel of Anderson drawing the conclusion of an inherent conflict, putting aside that the standard is an irreconcilable conflict, have the litigant... Let me read to you from Anderson very early in the opinion, because the issue strikes at the heart of the bankruptcy court's unique powers to enforce its own orders, we affirm the district court decision below. Right, and I think that doesn't speak to reconcilability. It doesn't speak to reconcilability. I mean, there are, what was not brought to the attention of the panel and Anderson was the fact that when state courts under the concurrent jurisdiction framework established by Congress, reach a decision on 524 claims, such as the one that we have here, federal courts respect that and preclude subsequent bankruptcy, subsequent efforts in bankruptcy court to seek contempt. For example, the Flanders case, the 10th Circuit, for example, Candidas in Eastern District. So I think had that law been brought to the attention of the court, to the panel, I think it would have been very, very tough for the panel to reach a conclusion about an irreconcilable conflict, which is what is required under EPIC and McMahon. And then, and I hope that answers your question, Your Honor. I expect that we'll hear from my friend at Bush Schiller that his lawsuit is really a contempt proceeding about one judge's order that simply shouldn't be heard by anyone but the bankruptcy judge. But that argument doesn't work for two reasons. First, the plaintiff seeks to represent a class of former debtors discharged by hundreds of different bankruptcy judges around the country, and has stated that the primary issue of law for the class is whether there has been a violation of section 524A2. And that's in the amended complaint at JA 261. And there's a one cause of action here and one cause of action only, and that's for failure to abide by the injunction in 524A2. This is a statutory claim, and it's not about one judge's order. It's about a claim to statutory violation within a request for a jury. If discharge injunctions were only enforceable by the bankruptcy court that issued them under 524, and we know that's not true because of the concurrent jurisdiction that Congress created, but if it were true, plaintiff's own complaint would make no sense given the nationwide class she seeks to certify. And the second thing is- But you're conceding that this is a core proceeding nonetheless. We have not briefed whether it's a core or non-core proceeding, and under Second Circuit, and that certainly was the finding in Anderson, but under Second Circuit, under Supreme Court precedent, whether it's core or not core doesn't really fit into the analysis. What the analysis is, is there a clear and manifest congressional command to exempt a statutory claim from the ambit of the FAA? And the court time and time and time again has said no. And in ethics, they've said, we've looked at over decades and decades, litigants have tried to conjure conflicts between the FAA and statutory claims, which is what we have here. That's plaintiff's cause of action. And again, and again, and again, we have rejected it. And the court should do so here as well. All right, let's pause for a minute. I wanna make sure Judge Winter has an opportunity to ask questions of you, Mr. Megan. Judge Winter, do you have any questions? No, I have no questions, thank you. All right, Judge Wetzel, do you have any additional questions? No, I'm good, thank you. So I guess I'm curious as to whether you think it would make a difference if this was just basically about one order from one bankruptcy court, not a class action, would the analysis be different? I think the way we would think about it is different, but really, no, because Congress in 28 U.S.C. 1334 said that there is concurrent jurisdiction and state courts can hear about this. And one thing that my friend from Boise Schiller told the panel in the Anderson case was that the discharge question can only be raised as an affirmative defense in the state court. And that's not true, really, in two respects. One is there are claims that are brought as affirmative claims, such as the KW Enterprises case or the Skagans case that we cited where they're brought as affirmative claims. And when the issue comes back to bankruptcy court, federal courts, including circuit courts, preclude those claims. And if my client were to bring an action in state court and the question of dischargeability or violation was litigated and it came back, it would be preclusive. So even if it was on a one-on-one basis, Congress has spoken that the state courts can look at these as well. And the fact that Congress has spoken in that way, both indicate strongly that there's no clear and manifest congressional command to exempt these claims from the FAA. And that there's no irreconcilable conflict, which is the standard, not inherent conflict. But that issue was not briefed to Anderson. And I think that's part of the issue. But if this were also, I would say further, Judge Sullivan, if this were just a contempt order, we may be closer to the case that you had on the district court, the Polo PRL case. Even that case dealt with orders of infringement that were alleged to be violated and there were contempt issues. And even there, the underlying merits issues were sent to arbitration and the contempt issues were stayed. So even if we were in that sort of one-on-one scenario, that seems to be the result that should be required, at least in that scenario, even in the absence of the concurrent jurisdiction and even in the absence of the irreconcilable conflict issue, which is another hurdle to get over. All right. So Mr. Megan, you've reserved a minute for rebuttal, we've gone over, but I'll give you that minute. We'll now hear from Mr. Carpinello for the appellate. Thank you. Thank you, Your Honor. Thank you, Your Honor. I'm George Carpinello, Boy Schiller Flexner for the appellees. Your Honor, this case is clearly governed by Anderson. Anderson found that there was an inherent conflict between the FAA and the Bankruptcy Code in this very context. And that places the appellants in a logical box, I think pointed out or suggested by Judge Wesley. Basically what they have to say here, they have to say one of two things here. Number one, you should overrule Anderson as a co-panel of the same circuit. Or number two, even though Anderson found an inherent conflict, the fact that the text of the statute is silent, renders the inherent conflict decision irrelevant. I don't think the law supports either argument. Well, wait, if the language of this, I'm sorry, you get three minutes. I'm sorry, Mr. Carpinello. Go ahead. Well, thank you, Your Honor, but let me, these cases arise out of the exact same facts, the exact same law. The only thing different are the names of the cases. They are companion cases decided the same way by the bankruptcy judge, Judge Drain. This case was when Judge Brichetti reversed this case, unlike Judge Roman who affirmed Judge Drain in the Anderson case. We mandamus this court and this court held the mandamus pending the decision in Anderson. And then after the decision in Anderson said, we should go back to Judge Brichetti to reconsider in light of Anderson. Case law clearly requires adherence to a decision of a prior panel, unless there's an intervening on bank decision or Supreme Court precedent that clearly undermines the prior decision. That is not the case here. What they're asking you to do is to overrule Anderson. And by the way, also overrule McMahon, which has not been overruled by the Supreme Court itself. They make two arguments. One is that Epic overrules Anderson, the Fifth Circuit and Henry said, that's clearly not the case. Judge Brichetti said, that is not the case. And it's not the case for several reasons. First of all, Epic does not overrule McMahon, but Sisyphus- You have one more minute. Thank you. Second, Epic was not a contempt case. This is clearly a contempt case. And contrary to the affluence arguments, we alleged the contempt case. The GE Council, for example, suggests that we allege contempt in our original complaint, but took that out of the amended complaint. He's incorrect. If you go to paragraph 15 of the amended complaint, you see the same language as in paragraph six of the first complaint. And we also say that the expressly, that the defendant's conduct is in contempt of this court. They cite Taggart several times in their brief, but they fail to cite the provision in Taggart, which says expressly at 139 Supreme Court 1801, that these cases are civil contempt of the discharge order. Even though section 524 provides a statutory injunction, it's still contempt of the discharge order. And Anderson itself says the fact that 524 is uniform throughout all the bankruptcy courts does not render the inherent conflict, it does not make the inherent conflict go away. We brought this case as a contempt for one very important reason. Bankruptcy judges understand the impact of creditors violating the discharge orders. And bankruptcy judges are best suited to decide what the proper remedy is when a creditor violates, blatantly violates in this case, a discharge order. To suggest that parties by private agreement can divest the court of its power to issue a contempt order for violation of its orders is, we suggest, never been affirmed by any court, any appellate court, or hardly any district court. They cite one case, Trevino, which relied upon Judge Brachetti's first decision and ignore the fact that it was reversed. So I believe that my initial time is up, Judge, and I can answer your specific question. Well, let me first ask my colleagues if they have questions. So Judge Winter, do you have any questions for Mr. Carpanello? No, I don't, thank you. All right, and Judge Wesley. Mr. Carpanello, what do you make of your opponent's reliance on the fact that state courts can determine whether the scope of the 524 order and the discharge, and that their judgments are entitled to conclusive effect with regard to that? They say that that's clear indication that it's not exclusively for bankruptcy judges. You said bankruptcy judges are best suited to decide their orders. I may tend to agree with you with that, but Congress has decided to cede some of that to state courts, hasn't it? What's your answer to that? Well, there's one very important distinction they ignore. State courts do not have the power to enforce their orders to find a party in contempt and to render contempt remedies for violation of the discharge order. All that state courts can do is to determine that a debt is the subject of a discharge. So for example, in all the cases they cite, it's either a situation where the creditor sues the debtor and state court to get judgment on the debt and the debtor may raise the discharge as a defense. If the debtor does raise the discharge as a defense, or even if the debtor brings a declaratory judgment that the debt is discharged, all the state court can do is to determine whether the debt has been discharged. But what a state court cannot do, and by the way, Anderson clearly says this, and this was the very issue discussed in the oral argument in Anderson, which I argued, is the state court cannot enforce the integrity of the bankruptcy court's orders. It can only make a determination as to whether a debt is within the scope of the discharge order. And we suggest that the legislative history, particularly 14F as enacted in 1970, which says that a state court, if for example, a state court, in a state court, a creditor sues a debtor on a discharge debt and the debtor does not appear or the debtor does not raise the discharge as an affirmative defense, that judgment is void and is not entitled to any full faith and credit in the federal court. That was the purpose of section 524, which says any state order in violation of a discharge debt is void. The only situation in which state courts have jurisdiction is if the debtor chooses to raise the discharge in state court, and then if the debtor does that, the debtor will be bound by collateral estoppel with the decision that the debtor gets. But the debtor doesn't have to do anything in state court. The debtor can ignore the action and the debtor can march into bankruptcy court when the creditor seeks to enforce that judgment. And they do. When the creditor seeks to enforce a state court judgment, the debtor marches into bankruptcy court and holds the creditor in contempt for going into state court and getting a order to enforce a discharge debt. It's only when the debtor chooses, only when the debtor chooses to invoke the state court jurisdiction, does the state court decision get full faith and credit in the federal court. They ignore that distinction entirely. I have no further questions, thank you. I have a couple, this is Judge Sullivan. I mean, it seems to me this is a class action brought in a bankruptcy court in White Plains on behalf of a nationwide class of debtors whose debts were discharged in other bankruptcy courts all around the country. And so you're arguing that basically Judge Drain or the bankruptcy court here can be holding people contempt for violating court orders in other bankruptcy courts around the country? Yes, Your Honor, for a couple of reasons. First of all, we urge the court to review Judge Drain's explanation in the Haines case as to why that's appropriate. The argument that only the judge that enters the order can enforce a contempt is actually a misreading of the precedents which go all the way back to 1600s in England. It's the court, it's the court that enters the order that can enforce it by contempt. The court here is the bankruptcy court or technically the district court is one court in the United States. In the bankruptcy court, Judge Drain can enforce the order of other judges. But I would also add two other points. First of all, Anderson said, and we think it's finding precedent, the fact that it's brought as a class action does not change the calculus at all. There's still an inherent conflict. And secondly, whether or not these cases proceed as class actions is not before the court. Indeed, it's ironic that my adversaries argue that this is not a contempt because they made motions to dismiss in the bankruptcy court that the class action should not proceed because it's in the nature of a contempt proceeding, which they claimed could only go to the particular judge. And we would cite, for example, the Bassett case in the First Circuit. If you reach the issue of a class action, that these class actions are appropriate. It's very different than a fair credit reporting case, Your Honor, because what this case is based upon is the bad faith of these creditors to intentionally and in a nationwide way violate discharge orders. And they're doing it by- Different discharge orders in different courts, right? Yes, but all the same issue or the same discharge order, and as the court said in Anderson, even if it's a uniform order and a uniform statute, the fact that it's a class action does not take away from the fact that there's a conflict. You know, that's what Anderson said with virtually no analysis. And it just sort of did a real quick, you know, end around MBNA versus Hill, it seems to me. But, you know, that's the law of the circuit, I get that. But it does seem to me that what you're arguing here is that a judge in New York gets to enforce the discharge orders in other courts all around the country, right? And they have argued, and I'm sure this issue will be back before the court on a separate motion that it's not appropriate for a class action. But the fact that we assert it as a class action, we think it's appropriate. We think it's conceivable that we, you know, that a court will disagree with this or that. In fact, the Fifth Circuit disagreed with that in Crocker and said it's not appropriate for a class action. But that's not a basis to say, therefore it should go to an arbitrator. If you're offended by the idea that this is a class action, the remedy would be not to make it a class action. We disagree, of course, and we think that Judge Drain was correct that it can be a class action. But that's not a reason to send it to an arbitrator. We don't think it's appropriate, whether it's Judge Drain's own order or the order of all the judges around the country to say that the bankruptcy court, when their own order is violated, that the debtor cannot go back in front of Judge Drain and say, look what the creditor is doing. And Judge Drain has to say, well, you gotta go to the AAA. I am powerless. What they're saying is because the credit card companies have an arbitration clause and the credit card contract, Judge Drain is powerless. To enforce his own order. That's what they're asking you to have decide today. That's the issue before the court today. And we think as all the judges, with one exception have said, that's just an impossibility. That's just an inconceivable result that the bankruptcy judge cannot use the powers of the bankruptcy court to make sure that a creditor follows a discharge order. Judge Sullivan, can I ask one more question? I apologize for asking. No, not at this time. Mr. Carpinello, even as a swear in a class action, the relief that you're seeking, which is the fact that this is not arbitrable, would then in essence extend across the nation in any of that. I'm thinking of the Uber class action and the fact that they were litigating the individual provision with regard to the Uber drivers, but then it clearly affects across the country. That if this were found to not be arbitrable, the fact that it only was declared in your case, would it have ramifications across the country in any event, wouldn't it? Yes, there'd be collateral estoppel judge against these defendants. They could not- Right, right. So whether it's a class action or not, like you said, the law issues straight up or down with regard to them. Yes, exactly. It's the exact same conduct. It's literally the exact same conduct with regard to every person in our class and they would be bound across the country as a matter of collateral estoppel. Well, in your view, this is Judge Sullivan again, does Anderson effectively overrule Hill? No, your honor. We think Hill was the outlier and the reason Hill came out the way it did is because it was a violation of the automatic stay, which is in place during the course of the bankruptcy proceeding. And the court- Statutory. Well, statutory right, the same as a different right, but it also, you've got a statutory claim here, right? Well, we have also an order. There was no order in Hill, but equally importantly- No, there's no order in Hill, but you're bringing a claim under the code, under 524A2, are you not? And for contempt of the discharge order. Okay, so if there were no discharge order, it was just five, I mean, I don't understand if you can separate them, but there's a statute here. There was a statutory provision in Hill, and yet the court in Hill said that goes to arbitration, right? Yes, but one very important factual distinction. In Hill, the court emphasized the fact that the purpose of the stay was over because the bankruptcy was over. We're dealing with a discharge order, which comes into play after the bankruptcy is over, that this is the critical period of time when the discharge order becomes most important. That is the fresh start. It's after the bankruptcy that 524 comes into play. It's after they get their discharge and they're trying to rehabilitate themselves that the code is most concerned. And in fact, this is, as Judge Drain said, this is the most fundamental provision in the entire bankruptcy code, because if you go through bankruptcy and all the problems of going through bankruptcy and giving up, as he says, your engagement ring to the creditors, and then a creditor can come after you, that defeats the entire purpose of the bankruptcy code. That was not the case in Hill. In Hill, it was an issue of violating the stay during a proceeding that had long since ended and the creditor offered to give her her money back. And the court said, what's the point here? This case is long since over. What's the point that, why can't an arbitrator decide this claim? And in Hill, they said, we're not dealing with this situation where the purpose of the bankruptcy code still come into play. And Hill distinguished this exact very case. And that's why in Anderson, the court, I think, was careful to point out that this is not like Hill, because we got a discharge order that comes into play after the bankruptcy is over. Exactly when these people, after they got their discharge, these creditors, and by the way, GE is not a non-creditor, GE is a creditor, because it's their trade line that they refused to change. They refused to change the credit report to show that this debt had been discharged in bankruptcy. Why did they do that? For a very simple reason, because if you leave it past due, these people cannot get a mortgage. We established that on the record in Belton. We had an affidavit that said, if you have a past due on your credit report, you can't get a mortgage. So what does a person who's going through bankruptcy have to do in order to get a mortgage? They gotta pay the debt, which is exactly why these creditors have refused, consistently refused, to change the trade line to indicate that it was discharged in bankruptcy. It's a form of collection on a debt. And so the critical purpose of the bankruptcy code is being defeated by these creditors. And that's why this is so very different from health. All right, let me just ask my colleagues if they have any other questions. No. No, thank you. So thank you, Mr. Carpinello. We'll now hear from Mr. Noga for two minutes. Thank you, Your Honor. I'd like to make two points just before I start. My client was a non-creditor. The Belton filed papers that showed that the amount of the sold debt that was owed was zero. So I just want to add that. First, I'd like to just go back to Anderson for one second and take a step back and look at it. Our point, and the point that I was trying to make earlier, is that if you say that Anderson held that the purpose of a statute can create an inherent conflict, and you can do that without reference to plain text or legislative history, I mean, you literally could have a situation where the statute says this claim is arbitrable, and you look at the purpose, and you say, well, that's a conflict, and therefore, the purpose of the statute can override the plain language of the statute. I mean, it just can't be an independent inquiry. Don't you think that's a little far-fetched? I mean, seriously. I mean, if Congress says that it's arbitrable, do you honestly think that a court is going to ignore that? I mean, seriously. That's not what this case is about. This case is about the fact that Congress said nothing. There are thousands of statutes. There are thousands of statutes. Congress is not omnipotent. There are not 535 Obi-Wans sitting in Washington thinking about every single law that they make. The question is whether the plain text is the only way to decide whether the FAA is trumped by some other federal statute. That's what the question is about here. I honestly, I find your hypothetical almost offensive. Okay, well, I'm gonna move on. And then on the order point, I just want to point out that- I'm sorry, you have one more minute. That Belton here in saying that it's not the court that issued the order, which is the home court in White Plains. It's bankruptcy courts as a class that essentially are the group that is going to have jurisdiction over this. It's different from, I think, the point that has been made in other cases, which is essentially that the home bankruptcy courts have the most controls. And we cite in our papers in a number of cases that where that argument is made, and that is not an argument that they are embracing. So having not embraced that line of argument, we question whether the court should apply it here. And that's the two points I wanted to make. That's not really the issue in front of us today, though, is it? And it's troubling, I agree with that, but it's not really what we've been asked to resolve in this appeal, it seems to me. Well, we, I mean, essentially our argument in part that they are playing fast and loose here a little bit with their claims. I mean, they really want a statutory claim. And they're now saying, court, please help us because there's also this court order and we're making contempt. And our point is, okay, well, if that's what you wanna do, and you wanna say, this is about a court order, then embrace it and all that comes with it. And they don't wanna do that. And this notion that, as Mr. Carpinello argued, that jurisdiction and the special place that we put a court order is for all bankruptcy courts across the country. And by the way, there are many courts that are already on record didn't disagree with the interpretation of the Torres decision that is the basis of this complaint. That is just fundamentally different from what I think the need of that argument is. All right. Okay, any questions for Mr. Noga on rebuttal? No. Okay. So, all right. Thank you, Mr. Noga. We'll now hear from Mr. Nagin for a minute. Mr. Nagin, you there? Yeah, the dreaded, excuse me, Your Honor. Thank you. I would note that the decision in Anderson preceded Epic. The decision in Anderson found that text was waived. Epic said text is critical. Epic said it's never found a conflict, ever, ever, ever. And in describing Anderson in the cert petition which was denied, plaintiff's counsel, Mr. Carpinello, said that the case came in an unusual position because the decision was of unique and limited procedural and factual circumstances. And I would agree with that because of the waiver issue. And further, in retrospect, Epic is perfectly clear that you needed an irreconcilable conflict, not an inherent or severe conflict. And Epic- But this argument was certainly made in the Fifth Circuit and rejected, right? In Henry? Not the irreconcilable conflict. Not that there was an irreconcilable conflict. The issue in Henry was just- It's a post-Epic case in which the argument was that Epic changes everything. And therefore, I mean, and it comes out the other way. It says that Epic doesn't alter the conclusion basically of Anderson, right? Yeah, but the argument that I put was not made there. And also what was not brought to the attention of the court in Henry was the concurrent jurisdiction and the fact that in decisions like Flanders and Candidas and even King, which gave preclusive effect to an arbitration panel decision on 524, that those kinds of, that kind of law that is living Congress's edict in 1334 makes it impossible to find an irreconcilable conflict. And I would just say, you know, I would just say one other thing in my remaining time that, you know, we've heard things like the discharge is fundamental and it's important and the bankruptcy court is best suited. Those are policy issues. Those are policy issues. And we can have a vigorous disagreement or agreement on that. Why else do people go bankrupt, counsel? Why else do they go bankrupt? Why else do they file a bankruptcy court? I think those are important. They do it to get their debts discharged. I mean, seriously, are you seriously saying that there's another reason why you'd go to bankruptcy court? You take your corporation six times to bankruptcy court. I mean, what is it? I mean, I don't understand. Why you obviously go to bankruptcy court for a fresh start. What is it that you seek from bankruptcy? Clearly you're correct, your honor, but the question that we're thinking with- Okay, literally? Is there a clear and manifest congressional intent, a clear and expressed congressional intent to displace the FAA? And here there's not. I would just say one last thing. Let me ask you this. If an arbitrator found that you could continue to disregard the court's order and that you could hold up the ability of someone who had gotten a debt discharged according to court order, but for some reason the arbitrator made a mistake of law, which is not grounds to vacate that, what does that do to the fresh start? I think to the extent there was a change in the order, that would present a very different question. I would say here though, what that issue in our case is damages. We granted the relief that the plaintiff asked for in 2014 and that's a JA-250 in Dominican Plaintiff 20. And we granted the relief that the entire accusative class wanted with a stipulation in 2015. This is a case about damages. This is a case that this plaintiff wants to have before one judge and a jury. And he's the one who wants to take it away from all of the other judges. So when I think in our case, it's a very different situation. It's a class action for damages for all statutory- The class hasn't been certified yet. The class isn't in front of us. So the legitimacy of the class in front of us, this is a complaint that's in front of us that alleges a violation of an order and a violation of the statute. That's what this case is. You can tell me it's a class action all you want, but it's not yet. Well, I think the point of the class action is the plaintiff is saying now, let's reserve it. This is a 24 question for Judge Drang and the jury. And he's filed all these cases in front of Judge Drang. And the class point comes not because of the rule 23 issue. The reason that I raised the class judicially is to make the point that it's the plaintiff who's actually trying to wrest the orders to the extent this is about an order from hundreds and hundreds of other judges over a 15 plus year period. He's the one who's trying to take it away from the other judges. So this is not about the integrity of a particular judge's order. This is about an effort to get damages in a way that the plaintiff sees that is the way that he sees most fit in a way to avoid arbitration. But again, there's no clear and manifest congressional commands here. The district court order should be reversed and the case sent to arbitration in accordance with the party's agreements. All right. Thank you very much. We'll reserve decision. We'll argue. Thank you. Got our money's worth in terms of time.